

## PERMANENT MEMORANDUM 73

## Title IX Policy Prohibiting Sexual Misconduct

POLICY DIGEST
Monitoring Unit: Office of General Counsel & Legal Affairs
Initially Issued: December 15, 2015
Last Revised: August 14, 2020

## I. INTRODUCTION

This Permanent Memorandum outlines the procedures for addressing and resolving allegations of Sexual Misconduct (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, sexual harassment, retaliation, etc.).  LSU's Title IX Coordinator is responsible for administering this policy at all University locations.

## II. NONDISCRIMINATION NOTICE

LSU is committed to creating an environment of inclusion and respect among students, faculty, staff and the community at large.  LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national or ethnic origin, age, disability, genetic information,  veteran's status or any other status or organization protected by state or federal law, in its programs and activities. This includes all aspects of LSU's education programs and activities, including admission and employment.

Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy. Inquiries about the application of Title IX and this policy may be directed to the LSU Title IX Coordinator, the respective Title IX Campus Coordinator, or to the U.S. Department of Education Office for Civil Rights Assistant Secretary.  https://www2.ed.gov/about/offices/list/ocr/contactus2.html

## III. POLICY STATEMENT/PURPOSE

Sexual Misconduct violates an individual's fundamental rights and personal dignity and will not be tolerated.  LSU prohibits and is committed to an environment free of discrimination on the basis of sex and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.

LSU will take prompt action to prevent prohibited conduct, discipline those who violate this

Exhibit A

policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints.  Everyone has a responsibility to prevent and report acts of prohibited conduct.  The entire LSU community is responsible for fostering a welcome environment conducive to learning.

## IV. POLICY COVERAGE/SCOPE

This policy applies to all members of the University community, including faculty, staff, students, volunteers, organizations and any other affiliate that participates in activities associated with LSU.

This policy covers conduct that occurs:
- In the course of LSU's operations;
- On campus or any other University owned, leased, controlled or operated location;
- Within the bounds of the United States;
- At any LSU sponsored event or organizational activity in the United States whether on or off campus; and/or
- Where LSU exercised substantial control over the Respondent in the context of where or how the alleged incident occurred.

Students are responsible for their conduct from notice of admission through the awarding of a degree or departure from the University.  Employees are covered by this policy when representing LSU (or deemed to be a representative of LSU) whether before, during or after work.  This policy also applies to any person who is both a student and an employee at LSU.

Anyone subjected to Sexual Misconduct is encouraged to file a complaint with the Title IX office.  Any individual who has experienced Sexual Misconduct is also urged to utilize supportive measures available through the University whether or not the person who caused the harm is a University community member.  Supportive measures are available whether or not a Formal Complaint is filed.

This policy is not intended to infringe on or restrict rights guaranteed by the United States Constitution including free speech under the First Amendment, due processes clauses of the Fifth and Fourteenth Amendments and the Fourth Amendment.

**Appendix 1**
**REPORTING MISCONDUCT**

**REPORTING MISCONDUCT**

1. LSU strongly urges prompt reporting of any incidence of Sexual Misconduct. Complaints may be reported to:
   - LSU Title IX Coordinator, Title IX Campus Coordinator or Deputy Coordinator
   - Office of Student Advocacy and Accountability or Dean of Students
   - Office of Human Resource Management
   - Campus police department
   - Confidential survivor support services on campus (The Lighthouse Program, Confidential Advisors, etc)
   - Or any other Responsible Employee
   - Online at respective campus TIX webpages

     *A link to each campus' Title IX page may be found on the LSU Title IX page at https://www.lsu.edu/titleix/

2. An individual may also confidentially report to survivor support services (The Lighthouse Program, Confidential Advisors), mental health counselors, the LSU Ombudsperson, staff operating in a student health center capacity, or others designated by the University with a privileged role.

3. Upon notice of a possible complaint, Title IX Campus Coordinator will provide the Complainant information on reporting options, pursuing criminal charges, health care, counseling and supportive measures available.

4. Individuals are also strongly encouraged to report the offense to campus police or local law enforcement if they believe criminal conduct occurred (i.e. sexual assault, sexual battery, stalking, etc.).

5. To the extent possible, the Complainant and those who receive the complaint should preserve evidence and not disturb a potential crime scene. (This includes preserving all text or email communications that may be related to the incident.)

6. Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator. The following are exceptions to the Responsible Employee reporting requirement:

   - Information disclosed at public awareness events (e.g. Take Back the Night, candlelight vigils, protests, speak outs), or other public forums in which individuals may disclose incidents of prohibited conduct as part of educating others, or

- Disclosures made in the course of academic work product consistent with the assignment (ex. Public speaking class, creative writing assignment, group work)

**RIGHTS OF COMPLAINANT AND RESPONDENT FOLLOWING A REPORT**

1. The Complainant shall have the discretion and right to decide whether or when to file a Formal Complaint, report to law enforcement, and determine whether to proceed with a Formal Complaint, at the individual's discretion.

2. The Respondent shall have the right to be presumed not responsible of all allegations until found responsible for the alleged conduct by a hearing panel under this policy.

3. The Complainant and Respondent have equal rights:
   - To be treated with dignity and respect by LSU officials;
   - To take advantage of supportive measures;
   - To receive timely notice of proceedings, processes and outcomes under this policy;
   - To have an Advisor present at any meeting or hearing under this policy;
   - To refuse to engage in informal resolution of a complaint;
   - To present witnesses, including fact and expert witnesses, and any relevant evidence;
   - To receive amnesty for certain student misconduct, such as drug or alcohol violations, that occurred ancillary to the complaint at hand and consistent with this policy;
   - To be free from retaliation for reporting violations of this policy or cooperating with an investigation;
   - To be informed in writing of the outcome or resolution of the complaint, any sanctions, and the rationale for the outcome, where permissible;
   - To exercise a right of appeal as afforded in this policy.

Exhibit A

**Appendix 2**
**COMPLAINT AND INVESTIGATION**

**INITIAL RESPONSE TO REPORTS**

Upon actual knowledge of a report of Sexual Misconduct, the Title IX Campus Coordinator will promptly contact the Complainant to discuss the following:

- The process for filing a Formal Complaint;
- The right to have an Advisor; and
- The availability of supportive measures regardless of whether a Formal Complaint is filed.

**FORMAL COMPLAINT PROCESS**

1. A Complainant may file a Formal Complaint at any time.  A Formal Complaint must include the following:

   - Facts alleging prohibited conduct under this policy:
   - A signature (electronic or handwritten) or other designation that the Complainant is the individual choosing to file a Formal Complaint;
   - Some allegation or evidence the conduct occurred at a location or event covered by this policy; and
   - A statement that the Complainant is a student or other person seeking to participate in a program or activity of the university.

2. A Formal Complaint will be reviewed by the Title IX Coordinator to determine if it meets the threshold to proceed.  If all necessary component are present and the alleged conduct falls under this policy, an investigation will commence.

3. If the Formal Complaint warrants dismissal, the Complainant will be notified in writing by the Title IX Campus Coordinator within five business days of filing.  Other reasons for dismissal may include:
   - Withdrawal by Complainant;
   - At the time of complaint, the Complainant is no longer participating or attempting to participate as part of the LSU community; or
   - Respondent no longer affiliated with LSU.
   If a Formal Complaint is dismissed under this policy, the same facts may form the basis for a complaint under the applicable student code of conduct or other relevant policy or procedure. (i.e. non-sex or gender-based misconduct).

4. A Formal Complaint under this policy may be consolidated with other complaints when there are multiple allegations of conduct that arise out of the same facts or circumstances, such as when there are multiple Complainants or Respondents.

5. In very limited circumstances, a Title IX Campus Coordinator may file a Formal Complaint when the Complainant decides not to do so if the is determined that the

allegations present a risk of substantial harm to community member(s).  This may include use of threats; use of weapons; use of violence; a continued pattern of behavior; and/or predatory behavior.

**NOTICE AND INVESTIGATION**

1.  When an investigation commences the Respondent shall be sent written notice including the following:
    - The specific charges alleged;
    - The date and location, if known, of the incident;
    - A summary of the allegation with reasonable specificity; and
    - A request to meet with the Title IX Investigator.

2.  The Investigator will make every effort to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint within 30 business days of the notice.  Complex or consolidated investigations may take longer.

3.  The investigation shall include meetings with the parties involved, including witness and any other parties the Investigator may deem appropriate.
    - The Respondent and Complainant will be given the opportunity to identify witnesses to be interviewed.
    - The Investigator may seek and collect, and parties may submit, any documents or other relevant information, including, but not limited to:
      - Photographs
      - Video or audio recordings
      - Information from social media
      - Screenshots or other communications
    - At the conclusion of the investigation, the Investigator shall prepare a draft investigative report that summarizes the investigation, and all relevant evidence obtained.
    - The draft report shall be sent electronically to each party and the party's Advisor, if identified.
    - All evidence shall be included, even that on which the university does not intend to rely in reaching a determination regarding responsibility and shall include inculpatory and exculpatory evidence whether obtained from a party or other source.

4.  The parties shall have 10 business days from the date a draft report is submitted to review and submit a written response.  The Investigator will review the comments and prepare a final report.

5.  The final investigative report shall:
    - Include a timeline of events;
    - Include facts and circumstances surrounding the complaint;

- Summarize relevant evidence; and
- Be sent electronically, along with all evidence, to each party and Advisor, if identified, at least 10 business days prior to a hearing.

*All evidence shall be included, even that on which LSU does not intend to rely in reaching a determination regarding responsibility and shall include inculpatory and exculpatory evidence whether obtained from a party or other source.

**Appendix 3**
**<u>INTERIM MEASURES</u>**

1. Interim measures are remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution.

2. The Campus Title IX Coordinator, or designee, may recommend interim measures such as a "no contact" order or suspend a Respondent from participating in the education program or activity on an emergency basis.

3. The following procedure applies to an emergency removal or limitation:
   - The Title IX Coordinator must make a determination that the Respondent presents an immediate threat to the physical health or safety of any other individual arising from the allegations of Sexual Misconduct.
   - Written notice must be provided to the Respondent through the institutional email address of the reason for the interim measure.
   - The Respondent shall have a right to notify the Title IX Campus Coordinator in writing, of any request to challenge the suspension or limitation.
   - The Title IX Coordinator shall provide an opportunity to meet (virtually or in person, at the discretion of the Title IX Coordinator) within three business days of receipt of notice.
   - Title IX Coordinator shall provide notice in writing of the decision within three business days after the meeting via institutional email.
   - The interim action shall be in effect while request for review and review are pending.

**Appendix 4**
**<u>INFORMAL RESOLUTION</u>**

1. Informal resolution is a process whereby the parties work with a professional to reach a resolution of the complaint without a formal hearing.  This process is completely voluntary and requires the consent of both parties.  A party may terminate the informal resolution process at any time before conclusion.

2. The Title IX Coordinator must determine that the circumstances and parties are appropriate for informal resolution.  Complaints classified as sexual assault, rape, statutory rape, incest or involving violence resulting in significant harm to others are not appropriate for informal resolution.

3. The Title IX Coordinator shall appoint a trained individual to facilitate the process.

4. Informal resolution will never:
   - Be required as a condition of enrollment or continuing enrollment, employment or continuing employment or enjoyment of any other right;
   - Require a waiver of right to investigation and adjudication under the Formal Resolution process;
   - Be offered as a process unless a Formal Complaint is filed;
   - Be utilized to resolve an allegation against a Respondent employee by a student Complainant.

5. Informal Resolution Agreements
   - If a Formal Complaint is resolved through information resolution, a written agreement shall be issued including any terms, obligations or outcomes.
   - Agreements must have the approval of the Complainant and Respondent.
   - The agreement shall be shared electronically with the parties by the TIX Campus Coordinator within five business days of resolution.
   - Discussion and information generated during the informal resolution process are considered confidential and shall not be utilized or admissible in the formal resolution process.
   - No facilitator of an informal process may be called as a witness in any procedure under this policy.

**Appendix 5**
**PROCEDURES FOR FORMAL RESOLUTION/PANEL HEARING**

**FORMAL RESOLUTION**

The formal resolution process is the procedure by which allegations in a Formal Complaint are presented in a formal PM-73 hearing for a determination as to whether this policy was violated.

**PRE-HEARING CONFERENCE**

A pre-hearing conference shall be coordinated by the Title IX Campus Coordinator and chaired by the Hearing Panel Chair. Parties and Advisors are encouraged, but not required, to be present.

This conference shall be conducted at least two business days prior to a scheduled Hearing Panel and 10 business days after the investigative report is sent to the parties and Advisors, if applicable.

The purpose of the pre-hearing conference shall be to:
1. Identify the panelists and address any objections to members of the Hearing Panel;
2. Address evidentiary issues or questions to be posed a the hearing (i.e. numbers of witnesses, use of documents, expected length of hearing, etc.);
3. Ensure parties will have Advisors available to conduct cross examination and that the Advisor is familiar with the hearing process under this policy;
4. Provide a forum to address any questions related to the Hearing Panel process and procedures.

**HEARING PANEL**

The PM-73 Hearing Panel shall consist of one chair and two other LSU employees trained in adjudication. It shall afford each party an opportunity to present evidence and question opposing parties and witnesses.

**ADVISORS**

Each party is permitted to be represented by an Advisor. If a party does not have an Advisor at the Hearing, one shall be provided by LSU at no cost. The Advisor may be, but is not required to be, an attorney. The Advisor is the only person who may conduct cross-examination on behalf of a Complainant or Respondent. An Advisor will be appointed even in situations where a party elects not to participate in the Hearing.

**PRESENTATION OF EVIDENCE**

1. The procedure and order for presentation of evidence will be set and maintained by the Hearing Panel Chair.  Each party will be allowed the opportunity to present relevant evidence to the Hearing Panel.

2. The Hearing Panel Chair will allow each party to present its own relevant evidence through submission of documents and witness testimony.  Each witness will then be subject to cross-examination by other parties.  Cross-examination must be conducted directly, orally and in real time by the party's Advisor and never by a party personally.

3. Only questions relevant to determining the veracity of the allegations or the credibility of a witness will be allowed. The Hearing Panel Chair will have sole authority to determine whether evidence presented or a question in cross-examination is relevant and whether it will be permitted.  The Hearing Panel Chair must explain any decision to exclude evidence or a question as not relevant.

4. Questions or evidence about a Complainant's sexual predisposition or prior sexual behavior are not relevant, unless: (1) offered to prove that someone other than the Respondent committed the conduct alleged in the complaint, (2) concern specific incidents of the Complainant's prior sexual behavior with Respondent and are offered to prove consent.

5. Only evidence submitted to cross-examination may be considered by the Hearing Panel to determine responsibility.

6. The Hearing will be recorded and the recording or transcript will be made available for the parties for review.

**FAILURE TO APPEAR/ANSWER**

The Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on:  (1) A party's or witness's absence from the hearing or (2) Refusal to answer questions.

**DELIBERATIONS**

The Hearing Panel shall deliberate in closed session with only panelists present. The Hearing Panel is to apply the preponderance of the evidence standard when determining responsibility.  In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported than not.
Upon reaching a decision, the Hearing Panel will invite the parties and Advisors to return to hear of the Hearing Panel's finding regarding responsibility for a violation of this policy.

Exhibit A

If the Respondent is found responsible, the Hearing Panel shall move to address sanctions.

**DETERMINATION AND SANCTIONS**

If the Respondent is found responsible, the Hearing Panel may request input from the parties to evaluate possible sanctions. Prior conduct history of the Respondent will be considered when determining an appropriate sanction.  If additional information is requested, the Hearing Panel shall deliberate in closed session with only panelists present.

The Hearing Panel will notify the parties and Advisors of any sanction imposed.  The Hearing Panel will prepare and provide to the Title IX Campus Coordinator, within five business days of the Hearing, a written determination which must include:

- Identification of the allegations constituting Sexual Misconduct;
- A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
- Findings of fact supporting the determination;
- Conclusions regarding the application of the policy to the facts;
- A statement explaining the sanction for each policy violation found "responsible";
- Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Campus Coordinator is responsible for effective implementation of any remedies and sharing of outcomes. The written determination prepared by the Hearing Panel chair shall be shared electronically by the Title IX Campus Coordinator with the parties and Advisors within three business days of receipt from the Hearing Panel.

The determination regarding responsibility and sanctions becomes final either:

- If appealed, the date written notice is provided to the parties of the appeal result, or
- If not appealed, the date on which an appeal would no longer be considered timely.

**POSSIBLE CORRECTIVE ACTIONS**

Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, disciplinary probation, deferred suspension, suspension, expulsion psychological assessment, counseling, social restrictions, limited presence on campus, revocation of admission or degree.  Additional sanctions may also be imposed when appropriate.

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, administrative leave, demotion, psychological assessment, counseling, restricted presence on campus or termination of employment.

Both the Complainant and Respondent will be informed of the outcome of any corrective action or disciplinary process.

**Appendix 6**
**APPEAL**

**RIGHT OF APPEAL**

Any party may appeal a Hearing Panel determination. The following is an exclusive list of the bases for appeal:

- Evidence of bias by a Hearing Panel member.
- New evidence has become available since the Hearing Panel hearing that was not previously available with due diligence.
- There was a significant and prejudicial departure from the procedures and standards in this policy.
- The outcome was clearly erroneous based the facts and evidence presented to the Hearing Panel.
- The sanctions imposed were inappropriate for the violation.

**APPEAL PROCEDURES**

Notice of Appeal must be in writing and shall be forwarded to the Title IX Campus Coordinator within 10 business days of email notification of the Hearing Panel decision. The Notice of Appeal shall contain the following information:

- Name of the Complainant and Respondent;
- Identify the ground(s) for appeal;
- If appeal is based upon discovery of new information, a description/documentation of the new information and reason it was not discoverable prior to the Hearing Panel hearing.

Upon receipt of the Notice of Appeal, the Title IX Campus Coordinator, within two business days of receipt of the Notice of Appeal, shall:

- Confirm receipt of the Notice of Appeal to the appealing party;
- Notify any other party of the appeal; and
- Contact the LSU Title IX Coordinator (if appeal went to a campus coordinator).

The LSU Title IX Coordinator, or designee, and respective Title IX Campus Coordinator shall, within 10 business days of notice, review the Notice of Appeal.  If the required elements for appeal exist, the LSU Title IX Coordinator shall:

- Appoint reviewer(s) (no more than three);
- Notify the parties of identity of the identity of reviewer(s); and
- Provide the parties five business days to challenge the reviewer(s) for conflict of interest or bias.  (The LSU Title IX Coordinator in conjunction with the respective Title IX Campus Coordinator will determine if cause exists to excuse the reviewer.)

The Title IX Campus Coordinator shall forward the appellate record to the reviewer. The record shall include, but is not be limited to:

- All evidence introduced at the hearing;

- Any pre-hearing determinations from the Hearing Panel  Chair;
- The written findings of the Hearing Panel; and
- The recording or transcript of the formal hearing.

Within 10 business days of receipt of the appellate record, the reviewer(s) shall render a written decision including finding and rationale and forward to the LSU Title IX Coordinator. The reviewer may:

- Uphold the Hearing Panel outcome; or
- Modify the Hearing Panel outcome for responsibility and/or sanctions; or
- Overturn the Hearing Panel outcome and remand for a new hearing.

The LSU Title IX Coordinator shall notify the respective Title IX Campus Coordinator who shall then notify the parties and Advisors within two business days of receipt of the decision.

Appeal decisions are final. In the event of remand for rehearing, the subsequent Hearing Panel outcome may be appealed in accordance with the provisions herein. Any appeal right exercised under this policy shall complete the process.

**Appendix 7**
**MISCELLANEOUS PROVISIONS**

**PROHIBITION OF RETALIATION**

No person may intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this policy or because the individual has made a report or complaint, testified, assisted or participated or refused to participate in any manner in an investigation, proceeding or hearing under this policy**.** Retaliation is a violation of this policy and shall constitute misconduct subject to disciplinary action herein. LSU will take steps to prevent recurrence and remedy the effects of any violation of this policy.

Charging an individual with disciplinary actions outside this policy for making materially false statements in bad faith in the course of a grievance proceeding does not constitute retaliation.  A finding of responsibility against a Respondent, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

**TITLE IX COORDINATORS**

The President shall designate the LSU Title IX Coordinator who shall oversee, on all LSU campuses, the implementation, enforcement, and coordination of Title IX. Each Chancellor shall designate a Title IX Campus Coordinator to oversee on-campus Title IX compliance for their respective campus.  Campuses may appoint Deputy Title IX Coordinator(s) to assist the Title IX Campus Coordinator in their duties. A listing of Campus designees may be found on the LSU Title IX webpage at https://www.lsu.edu/titleix/ or by contacting the LSU Title IX Coordinator:
> Jennie Stewart
> University Administration Building
> 3810 W. Lakeshore Drive, Ste 123
> Baton Rouge LA 70803
> (225) 578-3918
> jstewart@lsu.edu

The President shall also designate a Deputy Title IX Coordinator for Athletics. In consultation with the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for Title IX compliance. Complaints, supportive measures or other concerns related to issues of Sexual Misconduct involving student athletes or Athletics personnel (other than those involving sports equity) shall be addressed in accordance with this policy.

**AMNESTY POLICY**

LSU encourages reporting and seeks to remove barriers in reporting of Sexual Misconduct. A Complainant or witness who, in good faith, reports Sexual Misconduct, shall not be sanctioned for nonviolent student conduct violations, such as underage drinking, provided

Exhibit A

such violation did not place the health and safety of any other person at significant risk of harm.

**CONFIDENTIALITY**

To the extent permitted by law, LSU will strive to maintain the confidentiality of any individual under this policy who:
- Has made a report or complaint;
- Has been named as a perpetrator;
- Has been named as a Respondent; or
- Has been named as a witness.

**COOPERATION WITH LAW ENFORCEMENT**

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of an investigation under this policy while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its investigation as soon as notified by law enforcement that it has completed the initial evidence gathering process. LSU may provide up to 10 business days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the investigation under this policy.

The University will implement appropriate interim steps and remedies during the law enforcement agency's investigation to provide for the safety of the parties to the case, the campus community, and to avoid any instance of retaliation.

**PREEMPTION**

To the extent a conflict exists between State or local law and Title IX, the obligation to comply with Title IX is not obviated or alleviated by any State or local law.  To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

**TASK FORCE**

Each campus shall establish a task force to address Sexual Misconduct.  Each task force shall invite student members to be represented through their respective student government body or other student organizations.

**RECORD KEEPING**

Records created or received under this policy will be maintained for seven years from the date each case is closed.  The following shall be kept as a part of the record:
- Each investigation including any determination regarding responsibility;

- Any audio or audiovisual recording or transcript of a hearing;
- Any disciplinary sanctions imposed on the Respondent;
- Any remedies provided to the Complainant designed to restore or preserve equal access to LSU's education program or activity;
- Any appeal and result therefrom;
- Any informal resolution and result therefrom;
- All materials used to train Title IX Coordinators, Investigators, decision-makers, and any person who facilitates an informal resolution process; and
- Records of any actions, including supportive measures, taken in response to a report or Formal Complaint.

LSU may be required to disclose information on a need-to-know basis in order to properly address a complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality or privacy by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student may result in disciplinary or corrective action.

## MEMORANDUM OF UNDERSTANDING

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with Louisiana law.  In accordance with La. R.S. 17:3399.11, et seq., the MOUs should:
- Clearly delineate responsibilities;
- Establish protocols for investigation, including standard for notification and communication and measures to promote evidence preservation;
- Include agreed upon training and requirements for the parties on issues related to sexually-oriented criminal offenses for the purpose of sharing information and coordinating training, to the extent possible;
- Evidence a  commitment and protocols to share information; and
  - State that local law enforcement agencies shall include information on police reports regarding status of alleged victim as an LSU student

The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault survivors.

## CAMPUS CLIMATE SURVEY

Each campus shall administer a Campus Climate Survey every three years (2022-2023, 2025-2026, etc) to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding Sexual Misconduct.  Each campus is encouraged to supplement the statewide survey with additional information specific to its unique characteristics that may assist in preventing Sexual Misconduct and administering strategies dealing with Sexual Misconduct.  The Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year the survey is required.

**TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS**

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus community about Sexual Misconduct, PM-73 and Title IX. Each campus will develop educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy. Information on these programs shall be available on each campus's Title IX website.


**TRANSFER**

The Board of Regents' Uniform Policy on Sexual Assault requires that: (1) institutions communicate with each other regarding transfer of students against whom disciplinary action has been taken as a result of violation regarding sexually-oriented criminal offenses, as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403; and (2) institutions withhold transcripts of students seeking transfer with pending disciplinary action relative to sexually-oriented criminal offenses, until such investigation and adjudication is complete.

**Appendix 8**
**DEFINITIONS**

**Actual Knowledge**  Any reasonable information of Sexual Misconduct or allegations of Sexual Misconduct provided to a Title IX Coordinator, Deputy Coordinator, or any other Responsible Employee. Notice would also include personal observation of such conduct by any employee.

**Advisor**  May be any person the Complainant or Respondent chooses, or appointed by LSU should the party not select someone.  The Advisor's function shall be to support and/or consult with the party during any proceeding or meeting under this policy. The Advisor  may, but is not required to, be an attorney.  Participation  shall  be limited as stated herein.

The Advisor may not act as a spokesperson except:
- During a Prehearing Conference or
- During the Hearing when conducting cross-examination of a witness.

Once a party shares the identity and contact email address for their Advisor, that Advisor shall be copied on correspondence from LSU on the case in accordance with the Procedures section of this policy.  A party may change Advisors at any time but must provide notice to the Title IX Campus Coordinator or Title IX Lead Investigator.

**Confidential Advisor**  Campus designees selected by Title IX Campus Coordinators and trained in accordance with Louisiana law to provide confidential services to students regarding reporting, supportive measures, rights to report to law enforcement and other information under this policy.

**Coercion**  The use of express or implied threats, intimidation, or physical force placing an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion may include administering a drug, intoxicant, or other substance with intent to impair one's ability to consent prior to engaging in sexual activity.

**Complainant**  An individual who believes that they are the victim of Sexual Misconduct under this policy and notifies the Title IX Coordinator or a Responsible Employee of the incident.

**Consent**  Clear, knowing and voluntary demonstrated through mutually understandable words or actions clearly indicating willingness to engage in a specific sexual activity and any conditions on the activity. It is active, not passive, and silence, absent actions evidencing permission, is not consent.  Responsibility for obtaining consent lies with the individual initiating the sexual activity.

Consent to engage in sexual activity may be withdrawn by any person at any time.  Once withdrawal of consent is expressed, the sexual activity must immediately cease.  Consent is automatically withdrawn by a person incapable of giving consent.  A current or previous consensual intimate relationship between the parties does not itself imply consent or preclude a finding of responsibility.

To give consent, a person must be of legal age.  Consent cannot be obtained through Coercion, fraud or from a person who the alleged offender knows or should reasonably know is incapacitated.  Use of alcohol or drugs does not diminish the responsibility to obtain consent.

**Formal Complaint**  A document filed by a Complainant or signed by the Title IX Coordinator alleging Sexual Misconduct against a Respondent and requesting LSU to investigate the allegation.  At the time of filing, a Complainant must be participating in or attempting to participate in the educational program or activity of LSU.

A Formal Complaint may be filed with the Title IX Coordinator or TIX Campus Coordinator;
- In person,
- By mail,
- By electronic mail,
- By phone, or
- By submission through designated online portals.

A Formal Complaint by a Complainant must include the individual's physical or digital signature or otherwise indicate that the Complainant is the person filing the complaint. When the Title IX Coordinator/Campus Coordinator signs a Formal Complaint, the Coordinator is not a Complainant or otherwise a party and must otherwise comply with duties of the position.

**Formal Resolution**  A process by which allegations are presented to a Hearing Panel for determination as to whether a Respondent is responsible for a violation of this policy.

**Hearing Panel**  A body assembled to hear testimony and weigh evidence resulting in a decision regarding responsibility based on the preponderance of the evidence.

**Incapacitation**  An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, drunkenness or intoxication is not necessarily the same as incapacitation. Incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk or stand without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**Informal Resolution**  A process whereby the parties voluntarily work with a professional to reach a mutually agreeable resolution of the complaint without a formal hearing.

**Interim Measures**  Remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution under this policy.

**Non-Consensual Sexual Contact**  Any intentional sexual touching, or attempted sexual touching, without consent.

**Non-Consensual Sexual Intercourse**  Having or attempting to have sexual intercourse, cunnilingus, or fellatio without consent. Sexual intercourse is defined as anal or vaginal penetration by a penis, tongue, finger, or inanimate object.

**Notice**  A report of Sexual Misconduct made to the Title IX Campus Coordinator, LSU Title IX Coordinator, Deputy Coordinator or any Responsible Employee.

**Respondent**  A person reported to have engaged in actions that may constitute Sexual Misconduct.

**Responsible Employee**  Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy. Responsible Employees do not include victims' advocates, mental health counselors, or LSU Ombudsperson.

**Retaliation**  Any acts or attempted acts against an individual for the purpose of discouraging an individual from exercising a right or privilege under this policy or Title IX. Activities protected from retaliation include reporting Sexual Misconduct, filing a Formal Complaint, and participation in an investigation, process or Hearing, whether as a party, witness or Advisor.

Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination. Complaints alleging retaliation may be filed according to the grievance procedures under this policy.

**Sexual Discrimination**  Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender or perceived gender.

**Sexual Exploitation**  Any act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse or exploitation of another person's sexuality. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, human trafficking, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**Sexual Harassment**  Conduct on the basis of sex that satisfies one or more of the following:
1. Quid Pro Quo Sexual Harassment  An employee conditioning the provision of aid, benefit or service on the Complainant's participation in unwelcome sexual conduct; or
2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive and objectively offensive that it effectively denies a person equal access to the education program or activity; or

3. <u>Sexual Assault</u>
   a. **Sex Offenses, Forcible** – Any sexual act directed against another person, without the consent of the Complainant including instances where the Complainant is incapable of giving consent.
      (1) **Forcible Rape** – Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant.
      (2) **Forcible Sodomy** – Oral or anal sexual intercourse with another person, forcibly and/or against that person's will or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
      (3) **Sexual Assault With An Object** – To use an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
      (4) **Forcible Fondling** – The touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, forcibly and/or against that person's will (non-consensually) or not forcibly or against the person's will in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
   b. **Sex Offenses, Nonforcible** – Nonforcible sexual intercourse.
      (1) **Incest** – Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by Louisiana law.
      (2) **Statutory Rape** – Nonforcible sexual intercourse with a person who is under the statutory age of consent of Louisiana.
   c. Sexual Assault also includes sexual battery as defined in La. R.S. 14:43.1.
4. <u>Dating Violence</u>  Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, Dating Violence includes, but is not limited to, sexual or physical abuse or threat of such abuse.  Dating Violence does not include acts covered under the definition of Domestic Violence.
5. <u>Domestic Violence</u>  A felony or misdemeanor crime of violence committed:
   a. By a current or former spouse or intimate partner of the Complainant;
   b. By a person with whom the Complainant shares a child in common;
   c. By a person who is cohabiting with, or has cohabited with, the Complainant as a spouse or intimate partner;

     d. By a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Louisiana; or

     e. By any other person against an adult or youth who is protected from that person's acts under the domestic abuse or family violence laws of Louisiana.*To categorize an incident as Domestic Violence, the relationship between the parties must be more than people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

6. <u>Stalking</u> Engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

     a. Fear for the person's safety or the safety of others; or

     b. Suffer substantial emotional distress.

     c. For the purposes of this definition

         (1) Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

         (2) Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant.

         (3) Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

         (4) Nothing in these definitions will be interpreted in a way that violates the First Amendment rights of any individual.

**Sexual Misconduct**  A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. For the purpose of this Policy, Sexual Misconduct includes, but is not limited to, sexual abuse, violence of a sexual nature, Sexual Harassment, Non-Consensual Sexual Intercourse, Sexual Exploitation, video voyeurism, or the obtaining, posting or disclosure of intimate descriptions, photos, or videos without the express consent or the persons depicted therein, as well as dating violence, domestic violence and stalking, as well as crimes of a sexual nature as defined in Title 14 of the Louisiana Revised Statutes or at La. R.S. 44:51.

**Sexually-Oriented Criminal Offense**  Any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R.S. 14:403.

**Supportive Measures**  Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or Respondent regardless of whether a formal complaint has been filed.  Such measures are designed to restore or preserve equal access to the education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the educational environment, or deter Sexual Misconduct. Supportive measure may include, but are not limited to;

- Mental of physical health services;
- Academic arrangements or adjustments;
- Modifications of work of class schedules;
- Mutual restrictions on contact between the parties;
- Changes in work, housing or academic locations;
- Leaves of absence; and/or
- Increased security and monitoring of certain areas of campus.

Supportive measures shall remain as confidential to the extent that such confidentiality would not impair the ability to provide the supportive measures.  The Title IX Campus Coordinator shall bear responsibility for coordinating the effective implementation of supportive measures.

Exhibit A

# PM 73 Process Flow Chart

LSU community member experiences conduct within PM 73 purview

Conduct reported to official with Authority/Responsible Employee

TIX Coordinator meets with Complainant about Supportive Measures and Process

Conduct **meets** definition and jurisdiction of Title IX Sexual Harassment

Conduct **does not meet** definition OR jurisdiction of Title IX Sexual Harassment

Formal complaint signed by complainant

No formal complaint signed by complainant

Staff/Faculty Respondent

Student Respondent

Notice of Allegations sent to Respondent and Advisor

Title IX Coordinator signs formal complaint

Title IX Coordinator agrees supportive measures only

Human Resources Process

Student Conduct Process

TIX Coordinator meets with Respondent- Supportive Measures and Process

Investigation

Prehearing conference

Hearing

Appeal

**Note:** Informal Resolution can occur at any time following formal complaint and prior to a finding of responsibility.

Exhibit A