**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


JANE DOE #1, ET AL.                                    CIVIL ACTION

VERSUS                                                 21-564-SDD-SDJ

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL.


**RULING**

This matter is before the Court on the Motion to Reconsider[1] by Plaintiffs, Jane Does #1-#6 ("Plaintiffs"). Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board" or "LSU") filed an Opposition[2] to this motion, to which Plaintiffs filed a Reply.[3] Defendant Stewart filed an Opposition[4] to this motion, to which Plaintiffs filed a Reply.[5] Defendant Russo filed an Opposition[6] to this motion, to which Plaintiffs filed a Reply.[7] For the following reasons, the Court finds that the Plaintiff's motion shall be granted in part and denied in part.

---

[1] Rec. Doc. 62.
[2] Rec. Doc. 68.
[3] Rec. Doc. 85.
[4] Rec. Doc. 67.
[5] Rec. Doc. 83.
[6] Rec. Doc. 69.
[7] Rec. Doc. 82.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Parties**

    Plaintiffs are six individuals who identify themselves as Does #1-6.  Does #1-5 are current or former students of LSU.[8] Doe #4 and Doe #5 allege that they began graduate programs in the LSU Department of French Studies in August 2017, and they were employed by LSU as graduate or teaching assistants.[9] Doe #6 identifies herself as an Associate Professor in the Department of French Studies at LSU.[10]

    Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board" or "LSU") is the governing body of the Louisiana State University system and is a public constitutional corporation organized and existing under the laws of the State of Louisiana to operate, manage, and control the system, including its campus in Baton Rouge.[11]

    Defendant Dr. Adelaide Russo ("Russo"), in her official and personal capacity, was at all relevant times a person of the age of majority and an agent and/or employee of LSU; since August of 2017, Russo has served as the Chair of LSU's Department of French Studies.[12]

    Defendant Troy Blanchard ("Blanchard"), in his official and personal capacity, was at all relevant times a person of the age of majority and an agent and/or employee of LSU; he served as Interim Dean of the College of Humanities and Social Sciences at LSU from May 2018 to November 2019, and thereafter as Dean of the College.[13]

---

[8] Rec. Doc. 1, ¶ 46.
[9] *Id.* at ¶¶ 67, 68.
[10] *Id.* at ¶ 47.
[11] *Id.* at ¶ 48.
[12] *Id.* at ¶ 50.
[13] *Id.* at ¶ 51.

Defendant Jennifer Normand ("Normand"), in her official and personal capacity, was at all relevant times a person of the age of majority and an agent and/or employee of LSU; she has served as Executive Director of Employee Relations at LSU since May of 2002.[14]

Defendant Jennie Stewart ("Stewart"), in her official and personal capacity, was at all relevant times a person of the age of majority and an agent and/or employee of LSU; she served as LSU's Title IX Coordinator from 2015 to March 2021.[15]

Defendant Lindsay Madatic ("Madatic"), in her official and personal capacity, was at all relevant times a person of the age of majority and an agent and/or employee of LSU; she has served as Associate Director of Employee Relations since June of 2010. During all relevant times, she also served as Deputy Title IX Coordinator for Employees with HRM.[16]

### B. General Allegations

This case presents disturbing allegations of sexual predatory conduct by an LSU employee and graduate student, Edouard d'Espalungue ("d'Espalungue"). The Plaintiffs, former and current LSU students and an LSU assistant professor, allege that they were victim to d'Espalungue's deviant behavior in various ways, which they reported to LSU officials and engaged LSU's Title IX process, to no avail. This ruling incorporates by reference the further details of the general allegations described in the prior ruling on the motion to dismiss.[17]

---

[14] *Id.* at ¶ 52.
[15] *Id.* at ¶ 53.
[16] *Id.* at ¶ 54.
[17] Rec. Doc. 57, pp. 3-11.

### C.  Specific Claims

The complaint included five Title IX claims, five § 1983 claims, and two Louisiana state law claims.[18] The Court dismissed all but two claims with prejudice.[19] Plaintiffs did not file an amended complaint for those two counts, but instead filed the Motion to Reconsider three days after the deadline for amending the complaint.[20] Plaintiffs now ask the Court to reconsider its rulings on all five Title IX claims and the two Louisiana state law claims.[21]

#### 1.  Count I – Title IX Deliberate Indifference (Does #1-3 v. LSU)

Does #1-3 allege LSU knew d'Espalungue posed a risk to female students but failed to rectify the situation because LSU was deliberately indifferent to the risk.[22] Does #1-3 allege that deliberate indifference caused Doe #1's rape on September 6, 2020, Doe #2's rape on January 31, 2019, and Doe #3's sexual assaults on multiple occasions in 2019.[23] The Court divided these claims into a pre-assault heightened risk claim for LSU's failure to mitigate the risk posed by d'Espalungue and a post-assault claim for LSU's improper handling of the Title IX complaints.[24] The Court ruled that the pre-assault heightened risk claim failed because the Fifth Circuit does not recognize heightened risk claims under Title IX.[25] The Court also ruled the post-assault claims were untimely

---

[18] Rec. Doc. 1, pp. 86-127
[19] Rec. Doc. 57, p. 51.
[20] The ruling stated that the amended complaint must be filed on or before December 2, 2022. *Id.* Plaintiffs filed the motion for reconsideration on December 5, 2022. Rec. Doc. 62.
[21] Rec. Doc. 62-1, p. 29.
[22] Rec. Doc. 1, ¶¶ 272, 275.
[23] Rec. Doc. 1, ¶¶ 276-77.
[24] Rec. Doc. 57, p. 32.
[25] *Id.* at p. 34.

because equitable tolling principles did not apply.[26] Therefore, Count I was dismissed with prejudice.[27]

Plaintiffs seek reconsideration, arguing the Court erred in failing to apply the federal discovery rule, which would have tolled their claims until the release of the Husch Blackwell report.[28] Alternatively, as with all their Title IX claims, Plaintiffs argue equitable tolling principles, if applied properly, would have made their claims timely.[29] LSU argues reconsideration is unwarranted because the Court correctly analyzed the timeliness of the claims and properly concluded the Title IX claims had prescribed.[30]

For the pre-assault claims, Plaintiffs ask the Court to reconsider the existence of heightened risk claims because of new case law since the initial ruling.[31] LSU argues the Court properly ruled that the Firth Circuit has not recognized heightened risk claims under Title IX.[32] For the post-assault claims, Plaintiffs ask the Court to reconsider because the Court made factual errors by categorizing the claim as post-assault and by assigning Does #4-6's knowledge to Does #1-3.[33] LSU argues the Court was correct in categorizing the claim as post-assault and dismissing the claim as untimely.[34]

### 2. Count II – Title IX Hostile Environment (Does #1-6 v. LSU)

Does #1-6 allege they were subject to a hostile environment due to gender discrimination.[35] The Court dismissed Doe #6's Count II claim with prejudice because, as

---

[26] *Id.* at pp. 34-36.
[27] *Id.* at p. 37.
[28] Rec. Doc. 62-1, pp. 11, 19, 21.
[29] *Id.*
[30] Rec. Doc. 68, pp. 8-14.
[31] Rec. Doc. 85, p. 10.
[32] Rec. Doc. 68, p. 5.
[33] Rec. Doc. 62-1, pp. 15-18.
[34] Rec. Doc. 68, p. 15.
[35] Rec. Doc. 1, ¶¶ 290, 292.

an employee, her Title IX hostile work environment claim is preempted by Title VII.[36] The Court dismissed Does #1-5's Count II claims without prejudice with leave to file an amended complaint to plead LSU exercised substantial control over d'Espalungue.[37] Does #4-5 also had leave to amend to clarify which allegations supported their hostile environment claim versus their retaliatory harassment claim.[38]

In their motion, Plaintiffs claim Count II was pled as a retaliatory harassment claim.[39] They then ask for reconsideration because they argue the Court made a legal error in failing to recognize retaliatory hostile environment claims under Title IX.[40] LSU argues reconsideration is unwarranted because the Fifth Circuit does not recognize retaliatory hostile environment claims under Title IX.[41]

### 3. Count III – Title IX Quid Pro Quo (Doe #3 v. LSU)

Doe #3 alleges she experienced *quid pro quo* sexual harassment because d'Espalungue made her position with the Journal contingent upon her accepting unwelcome sexual advances and performing favors.[42] Doe #3 alleges that LSU's official policies and customs of gender discrimination directly caused her to be subject to *quid pro quo* harassment.[43] The Court dismissed Count III with prejudice as untimely.[44]

---

[36] Rec. Doc. 57, p. 46.
[37] *Id.* at pp. 43, 46.
[38] *Id.*
[39] Rec. Doc. 62-1, p. 27.
[40] *Id.* at pp. 28-29. In their motion opposing dismissal, Plaintiffs attempted to use the continuing violations doctrine to save these claims. Rec. Doc. 37, p. 25. They do not raise a timeliness argument for Count II in their motion to reconsider.
[41] Rec. Doc. 68, pp. 6-8.
[42] Rec. Doc. 1, ¶ 305.
[43] *Id.* at ¶ 309.
[44] Rec. Doc. 57, p. 37.

As with all their Title IX claims, Plaintiffs argue equitable tolling principles, if applied properly, would have made their claims timely.[45] LSU argues reconsideration is not needed because the Court did not err in analyzing the timeliness of the claims and properly concluded the claim had prescribed.[46]

### 4.    Count IV – Title IX Heightened Risk (Does #1-5 v. LSU)

Does #1-5 allege that LSU's official policy of discriminatory responses to female students created a heightened risk of sexual assault and harassment which led to Does #1-2's rape by d'Espalungue, Doe 3's sexual assault by d'Espalungue, and Does #4-5's harassment by d'Espalungue.[47] The Court dismissed Count IV with prejudice because the claims were untimely and because the Fifth Circuit did not recognize heightened risk claims under Title IX.[48]

Plaintiffs seek reconsideration arguing the Court erred in failing to apply federal discovery rules and equitable tolling principles which, if applied, would make their claims timely.[49] Plaintiffs also ask the Court to reconsider the existence of heightened risk claims because of new case law since the initial ruling.[50] Defendants argue reconsideration is inappropriate because the Court correctly analyzed the timeliness of the claims and properly concluded the Title IX claims had prescribed.[51] Defendants also argue the Court

---

[45] *Id.*
[46] Rec. Doc. 68, pp. 8-14.
[47] Rec. Doc. 1, ¶¶ 313-14.
[48] Rec. Doc. 57, pp. 26-31, 34.
[49] Rec. Doc. 62-1, pp. 11, 19, 21.
[50] Rec. Doc. 85, p. 10.
[51] Rec. Doc. 68, pp. 8-14.

properly ruled that the Fifth Circuit has not recognized heightened risk claims under Title IX.[52]

### 5. Count V – Title IX Retaliation (Does #4-6 v. LSU)

Does #4-6 allege they were subject to a series of retaliatory and hostile acts after reporting d'Espalungue's conduct to LSU's Title IX office and that LSU was deliberately indifferent to the retaliation.[53] Plaintiffs did not plead specific retaliatory events to support their claims.[54] Accordingly, the Court dismissed Count V without prejudice and gave Plaintiffs leave to amend to plead, if they could, timely discrete acts of retaliation.[55]

In their Motion to Reconsider and Reply, Plaintiffs clarify that the claims of retaliation satisfy one of the necessary elements of a claim for retaliatory hostile environment (Count II).[56] Plaintiffs do not provide any specific arguments as to why Count V should be reconsidered but instead focus on the Court's purported errors in relation to Count II.[57] Therefore, Count V will not be reconsidered.

### 6. Counts VI-X

Plaintiffs allege various complaints under 42 U.S.C. § 1983 in Counts VI – X.[58] The Court dismissed all these counts with prejudice.[59] Plaintiffs do not ask the Court to reconsider its ruling on these counts.[60]

---

[52] *Id.* at p. 5.
[53] Rec. Doc. 1, ¶¶ 326, 329.
[54] Rec. Doc. 57, pp. 39-40.
[55] *Id.* at p. 40.
[56] Rec. Doc. 62-1, pp. 27-28; Rec. Doc. 85, p. 15.
[57] Rec. Doc. 62-1, pp. 27-28; Rec. Doc. 85, p. 15.
[58] Rec. Doc. 1, pp. 100-25.
[59] Rec. Doc. 57, p. 51.
[60] Rec. Doc. 62, p. 1.

7.  <u>Counts XI & XII – Negligence, NIED, and IIED (Does #1-6 v. All Defendants)</u>

Plaintiffs assert claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress under Louisiana Civil Code Article 2315.[61] The Court dismissed these Counts with prejudice finding that they were untimely for the same reasons as the Title IX claims.[62] As with their Title IX claims, Plaintiffs ask for reconsideration because they argue the Court made a legal error by failing to apply equitable tolling principles which, if applied, would make their claims timely.[63] LSU argues reconsideration is not warranted because the Court did not err in analyzing the timeliness of the claims and properly concluded the Title IX claims had prescribed.[64]

## II.  LAW AND ANALYSIS

### A.  Motion to Reconsider

Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the court at any time to revise an order or other decision that does not end the action.[65] The court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[66] LSU wrongly argues that the moving party must clearly establish a "manifest error of law or fact or present newly discovered evidence."[67] The manifest

---

[61] Rec. Doc. 1, ¶¶ 457-66.
[62] Rec. Doc. 57, p. 50.
[63] Rec. Doc. 62-1, pp. 11, 19, 21.
[64] Rec. Doc. 68, pp. 8-14.
[65] Fed. R. Civ. P. 54(b).
[66] *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994).
[67] Rec. Doc. 68, p. 4.

error standard applies to 59(e) motions.[68] Rule 54(b) motions use a more flexible standard that allows the court to afford relief from interlocutory judgments as justice requires.[69]

The Fifth Circuit's general principle is that "the district court must strike a proper balance between two competing interests: 'the need to bring litigation to an end and the need to render just decisions.'"[70] Therefore, the court should consider if there is any legitimate reason to revisit the earlier ruling and weigh those against the interest of judicial economy.[71] The court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment.[72]

Plaintiffs argue that reconsideration is warranted because the Court made factual and legal errors in its ruling, new evidence is available, and new relevant case law should be considered.[73] Their motion raises multiple issues for reconsideration. First, Plaintiffs claim the Court made a legal error by failing to apply the federal discovery rule to Plaintiffs' Title IX heightened claims and therefore wrongfully dismissed Counts I and IV as untimely.[74] Further, Plaintiffs argue these counts, and Counts III, XI, and XII, could have been saved by Louisiana's equitable tolling doctrines had the Court correctly applied them.[75] Second, Plaintiffs claim the Court wrongfully dismissed Count I because the Court

---

[68] *Austin*, 864 F.3d at 336.

[69] *Id.* at 337.

[70] *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 476 (M.D. La. 2002) (quoting *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994)).

[71] *Id.* at 477.

[72] *Adams v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the U.S. and Can., AFL-CIO, Local 198, et al.*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020).

[73] Rec. Doc. 62-1, p. 2.

[74] *Id.* at pp. 2-3. Plaintiffs cite an opinion that came out after the Court's ruling, *Doe v. Board of Supervisors of University of Louisiana System, et al.*, 650 F. Supp. 3d 452 (M.D. La. 2023), to support their discovery rule arguments. Rec. Doc. 85, pp. 2-3.

[75] Rec. Doc. 62-1, p. 3. This timeliness argument does not apply to Counts II or V because plaintiffs attempted to argue the continuing violations doctrine in the motion opposing dismissal and then failed to provide any timeliness argument as to Counts II or V in their motion to reconsider.

made a factual error by categorizing the claim as a "post-reporting" claim and by incorrectly ascribing knowledge to Does #1-3.[76] Third, Plaintiffs argue the Firth Circuit has not yet foreclosed a heightened risk claim in Title IX sexual harassment cases so, the Court made a legal error in dismissing Counts I and IV.[77] Fourth, Plaintiffs argue the Fifth Circuit has not yet foreclosed the question of whether retaliatory hostile environment claims exist so, the Court made another legal error in dismissing Count II.[78] Finally, Plaintiffs believe new relevant evidence exists and therefore request an order be entered to allow Plaintiffs access to documents and testimony in two other ongoing, similar cases against LSU.[79]

### B. Timeliness

#### 1. Federal Discovery Rule

Plaintiffs and Defendants agree that the appropriate statute of limitations for the claims is one year, as defined by Louisiana Civil Code article 3492 for personal injury claims.[80] All parties also agree that the one-year period starts running from the accrual date, which is defined by federal law.[81] Plaintiffs agree with the Court that a claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim.[82] "A plaintiff's awareness encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."[83]

---

[76] Rec. Doc. 62-1, pp. 2-3.
[77] *Id.* at p. 3. Plaintiffs also cite *Doe v. Board of Supervisors of University of Louisiana System, et al.*, 650 F. Supp. 3d 452 (M.D. La. 2023) to argue that the Middle District now recognizes a heightened risk claim under Title IX. Rec. Doc. 85, p. 10.
[78] Rec. Doc. 62-1, pp. 3, 29.
[79] *Id.* at p. 4.
[80] Rec. Doc. 57, p. 26; Rec. Doc. 37, p. 6.
[81] Rec. Doc. 57, p. 27; Rec. Doc. 62-1, p. 9
[82] Rec. Doc. 62-1, p. 9; *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015).
[83] *King-White*, 803 F.3d at 762 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).

However, Plaintiffs correctly note that the Court did not apply the law to determine when Plaintiffs' claims accrued and instead only evaluated the applicability of equitable tolling principles.[84] Failure to evaluate the accrual date provides a legitimate reason for the Court to reconsider its ruling on the timeliness of Plaintiffs' claims.[85]

Plaintiffs rely on the decision by the Sixth Circuit in *Snyder-Hill v. Ohio State University*, wherein the plaintiff asserted Title IX claims based on the alleged abuse by a team physician employed by the university.[86]  The plaintiffs filed suit ten years after the abuse occurred after an investigative report revealed the extent of the widespread sexual abuse committed by this physician against hundreds of male athletes between 1978 and 1998.[87]  The district court dismissed the plaintiffs' pre- and post-assault claims as time-barred.

The Sixth Circuit reversed and held that the plaintiffs' Title IX deliberate indifference claims did not accrue until those plaintiffs learned of the university's action or inaction after the publication of the independent investigation results in 2019.[88]  Further, the court found that the plaintiffs did not have a duty to investigate because no investigation would have led the plaintiffs to the discovery of the university's misconduct.[89] The Sixth Circuit cited to the Fifth Circuit's decision in *King-White* in applying the discovery rule to the facts of the case.[90]

---

[84] Rec. Doc. 62-1, p. 9; *See* Rec. Doc. 57, p. 27 (the Court defines the accrual standard and then moves straight into analyzing the applicability of equitable tolling doctrines).
[85] *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 477 (M.D. La. 2002)
[86] 48 F.4th 686 (6th Cir. 2022).
[87] *Id.* at 689-90.
[88] *Id.* at 706-07.
[89] *Id.*
[90] *Id.* at 698 (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015)("Title IX should be treated like § 1983 for limitations purposes." (collecting cases))).

LSU maintains the *Snyder-Hill* decision does not conflict with the Court's Ruling and offers no "new" guidance as Plaintiffs suggest.  LSU urges the Court to follow the Fifth Circuit's admonition in *Harrison v. United States* that a plaintiff must have knowledge of facts that would lead a reasonable person to conclude there was a causal connection or to seek professional advice to assist in reaching this conclusion.[91]

This issue arose in *Owens v. Louisiana State University*, wherein the plaintiffs asserted similar claims based on the alleged sexual assaults suffered by the plaintiffs at the hands of male athletes at LSU.[92]  The plaintiffs argued that the Husch Blackwell report served to toll prescription as to all claims, which the Court rejected.  The Court found that:

> [T]he publication of the Husch Blackwell report does not support the application of *contra non valentem* to the facts set forth in this case. Specifically, the Court again finds that, within some reasonable amount of time after initially reporting the Title IX violations, Plaintiffs would have understood that the Board's deliberate indifference to their reports was the cause of their post-reporting injuries, including an allegedly hostile environment, or Plaintiffs could reasonably have been expected to inquire further.[93]

However, the *Owens* court reached "the opposite conclusion with respect to Plaintiffs' heightened-risk claims," finding that, "until the release of the Husch Blackwell report in March 2021, [the plaintiffs] had no reason to know, and the Board concealed from them, that the Board had specific knowledge of the pervasive harassment and heightened risk of sexual assault by certain assailants suffered by Plaintiffs that interfered with Plaintiffs' access to educational opportunities and benefits."[94]

---

[91] 708 F. 2d 1023 (5th Cir. 1983).
[92] 666 F.Supp.3d 561 (M.D. La. 2023).
[93] *Id.* at 575 (internal footnotes omitted).
[94] *Id.* at 576.

In *Doe v. Board of Supervisors of the University of Louisiana System*, another case decided in the Middle District of Louisiana, the plaintiff alleged that while she was a student at the University of Louisiana at Lafayette ("ULL"), three women (two ULL students and another from a nearby community college) reported another student – Silva – to Lafayette Police for sexual assault.[95]  The Board of Supervisors of the University of Louisiana System ("ULS"), via the ULL administration, had previously received actual or constructive knowledge of Silva's prior alleged assaults but failed to take decisive action. After the plaintiff reported her own rape at Louisiana Tech University, which was Silva's alleged sixth assault, Silva was allowed to transfer back to ULL and graduate without any academic or disciplinary actions despite the system's earlier knowledge of his conduct.

In May 2021, A USA Today article was published outlining Silva's purported serial sexual assaults and the alleged institutional failures by ULS and other affiliated schools; this article prompted the plaintiff to sue ULS under Title IX. ULS moved to dismiss on the grounds that the plaintiff's claims were prescribed. Another section of this Court, relying on the standard articulated by the Sixth Circuit in *Snyder-Hill* regarding the discovery rule, denied the motion to dismiss the Title IX claim, holding that the plaintiff stated a plausible Title IX heightened risk claim against ULS that did not accrue until publication of the USA Today article in May 2021.

As will be discussed more fully below, the Court concludes that the Fifth Circuit *does* recognize Title IX heightened risk claims.  Thus, reconsidering its prior Ruling  and analysis set forth above, the Court concludes that the federal discovery rule applies to Plaintiffs' Title IX heightened risk claims, and they are not time-barred.  Plaintiffs could

---

[95] 650 F.Supp.3d 452 (M.D. La. 2023).

not have known of the need to investigate these claims until the release of the Husch Blackwell report on March 3, 2021. However, this only saves these particular claims.

   2.  Equitable Tolling

Plaintiffs argue equitable tolling principles should apply to save Counts I, III, IV, XI, and XII.[96] Under the federal discovery rule as analyzed above, the Count I pre-assault heightened risk claim and Count IV are timely. The Count I post-assault claim is also timely for reasons detailed below. Therefore, Plaintiffs' equitable tolling argument only applies to Counts III, XI, and XII.

In its ruling, the Court held the party who invokes equitable tolling bears the burden of showing that a case presents a "rare and exceptional" circumstance to which equitable tolling should apply.[97] Plaintiffs say the "rare and exceptional" circumstance standard is incorrect because it came from  non-Title IX cases.[98] Instead, Plaintiffs argue the Title IX case *King-White v. Humble Independent School District*, should apply. In that case, the Firth Circuit held that when a federal cause of action borrows the statute of limitations from state law, the equitable tolling rules should also be borrowed.[99] The statute of limitations for this case was correctly borrowed from Louisiana law so the equitable tolling rules should be borrowed as well. Louisiana calls equitable tolling *contra non valentem*.[100] "The doctrine of *contra non valentum* provides that prescription does not run against one who is ignorant of the *facts* upon which their cause of action is based and applies an exception to the [statute of limitations] where *in fact and for good cause a plaintiff is unable*

---

[96] Rec. Doc. 62-1, pp. 2-3.
[97] Rec. Doc. 57, p. 27 (citing *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999); *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998))).
[98] Rec. Doc. 62-1, p. 19.
[99] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015).
[100] *Eastin v. Entergy Corp.*, 865 So. 2d 49, 55 (La. 2004).

to exercise his cause of action when it accrues."[101] The doctrine of *contra non valentum* only applies in exceptional circumstances "1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or action on the plaintiff's action; 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the [plaintiff] from suing or acting; 3. Where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action; and 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant."[102]

Plaintiffs argue the third category, fraudulent concealment, should apply because LSU failed to comply with Title IX records requirements and public records law to attempt to conceal their discriminatory practices.[103] The Court declined to apply the doctrine of fraudulent concealment because the Plaintiffs' allegations that LSU's concealment caused their injuries did not plausibly allege "affirmative acts of concealment" or "some trick or contrivance" that would excuse late filing.[104] Plaintiffs ask the Court to reconsider this decision because "Louisiana courts have not interpreted fraudulent concealment under *contra non valentem* to require a showing of 'trick or contrivance.'"[105] The Court evaluated the doctrine under a Texas case even though *King-White* held that when a federal cause of action borrows statute of limitations from state law, it should also borrow equitable tolling rules.[106] Therefore, there is a legitimate reason to reconsider the

---

[101] *Id.* (emphasis in original).
[102] *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994); La. C. C. art. 3467, Official Revision Comment (d).
[103] Rec. Doc. 62-1, p. 22.
[104] Rec. Doc. 57, p. 31.
[105] Rec. Doc. 62-1, p. 21 (quoting Rec. Doc. 57, p. 31).
[106] Rec. Doc. 57, pp. 29-31; *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015).

applicability of equitable tolling doctrine of fraudulent concealment because the Court should have used Louisiana law in its analysis.

According to the Louisiana Supreme Court, the third category of *contra non valentem* applies when a "(1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud, or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff [was] reasonable in his or her inaction."[107] In *Marin v. Exxon Mobil Corporation*, the court declined to apply the fraudulent concealment doctrine because, while Exxon Mobil did mislead plaintiffs, they did not take active steps to prevent plaintiffs from investigating the cause of plaintiff's loss.[108] Similarly in this case, as the Court pointed out, Plaintiffs did not plausibly allege that LSU engaged in "affirmative acts of concealment."[109] Accordingly, the allegations do not warrant the application of fraudulent concealment.

In the alternative, Plaintiffs contend the fourth category of *contra non valentem*, the discovery rule, should apply because "they did not know and could not have known until the Husch-Blackwell report was released on March 3, 2021, that LSU had longstanding official policies and practices of deliberate indifference to gender discrimination and that there was a direct causal connection between this official policy and the injuries they experienced."[110] Plaintiffs ask the Court to reconsider the applicability of the discovery rule because they argue the Court imposed an "intentional concealment" requirement.[111] On review, the Court finds that it analyzed the intentional concealment requirement

---

[107] *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 252 (La. 2010).
[108] *Id.*
[109] Rec. Doc. 57, p. 31.
[110] Rec. Doc. 37, p. 7.
[111] Rec. Doc. 62-1, p. 20 (referencing Rec. Doc. 57, p. 31).

correctly.[112] Further, the Court correctly held that the discovery doctrine applies when "the cause of action is not known or reasonably knowable by the plaintiff, *even though his ignorance is not induced by the defendant*."[113] Because the Court correctly evaluated the applicability of the discovery rule, there is no legitimate reason to reconsider the ruling. The fourth category of *contra non valentem*, the discovery rule, also does not apply.

Counts III, XI and XII are dismissed as untimely because equitable tolling principles do not apply.

### C. Factual Error

#### 1. Count I – Classification as a Post-Reporting Claim

In Count I, Plaintiffs argue both deliberate indifference as to Does' #1-3 exposure to d'Espalungue, a "known serial predator," as well as LSU's improper handling and investigation of Plaintiffs' filed Title IX complaints.[114] The Court broke these two claims down into a pre-assault heightened risk claim and a post-assault post-reporting claim. Plaintiffs argue the Court incorrectly categorized the claims as post-reporting based only LSU's characterization and without support in the complaint.[115] Plaintiffs ask the Court to reconsider its characterization and evaluate the claims as pre-assault heightened risk claims only.[116]

The Court was correct to break Count I into a pre-assault heighted risk claim and post-assault post-reporting claim. Based on the complaint, Plaintiffs argue LSU was deliberately indifferent to exposing Does #1-3 to d'Espalungue, a "known serial predator"

---

[112] Rec. Doc. 57, p. 31.
[113] *Id.* at p. 29 (quoting *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002))(emphasis added).
[114] Rec. Doc. 1, pp. 86-90.
[115] Rec. Doc. 62-1, p. 3.
[116] *Id.* at p. 18.

which ultimately led to their rapes and sexual assaults.[117] Because Plaintiffs complain of LSU's actions before their assaults, the Court correctly categorized those complaints as pre-assault heightened risk claims.

Plaintiffs also argue LSU's official policies and customs of gender discrimination made LSU deliberately indifferent to their own failure to properly handle Does' Title IX complaints.[118] Because these actions, or failures to act, occurred after Does #1-3's assaults and reports of those assaults, the Court correctly categorized those complaints as post-assault post-reporting complaints. The Court will not reconsider its categorization of the claims as pre-assault and post-reporting.

2.  Count I – Does #4-6 Knowledge Incorrectly Ascribed to Does #1-3

Despite arguing that the claims should not be considered post-assault claims, Plaintiffs argue that the post-assault post-reporting claims are timely because Does #1-3 did not file reports with LSU's Title IX office until November, 2020.[119] Plaintiffs assert the Court incorrectly ascribed Does #4-6's knowledge to Does #1-3 and therefore wrongfully dismissed Count I as untimely.[120] LSU correctly points out that Plaintiffs say they are not seeking post-reporting relief but then they also attempt to seek the timing benefits of a post-reporting claim.[121] Regardless, Plaintiffs are correct that the Court made a factual error and wrongly dismissed the post-assault Count I claims as untimely.

In determining the timeliness of the post-assault claims, the Court evaluated what Does #4-6 knew and when.[122] The Court ruled that the claims were untimely because

---

[117] Rec. Doc. 1, pp. 86-90.
[118] *Id.*
[119] Rec. Doc. 62-1, pp. 15-18.
[120] *Id.*
[121] Rec. Doc. 68, pp. 14-15.
[122] Rec. Doc. 57, pp. 35-37.

Does #4-6 should have been aware of the injuries they suffered as a result of LSU's deliberate indifference long before October 4, 2020[123] given that they made multiple complaints about d'Espalungue's conduct and behavior to appropriate LSU officials beginning as early as 2018 and acknowledged that the school was dismissive of their complaints during this large span of time.[124] However, Count I was only brought by Does #1-3,[125] so the Court erred in evaluating the timeliness of Count I based on the knowledge of Does #4-6. This factual error provides a legitimate reason for reconsidering the ruling on Count I.

The Title IX reports at issue for Count I were filed by Does #2-3 on November 6, 2020 and closed by LSU without any sort of investigation on November 16, 2020, which is after the October 4, 2020 date.[126] Therefore, Does #2-3 claims for post-assault deliberate indifference against LSU are timely.

Doe #1's deliberate indifference claim relates to LSU's handling of the investigation into her September 6, 2020 rape.[127] Doe #1 reported the rape to LSU's Title IX office on September 8, 2020 and was informed on November 9, 2020 that d'Espalungue had been suspended from campus.[128] Both of those events occurred before October 4, 2020, but the conduct Doe #1 complains of occurred at a hearing on November 20, 2020 which is after October 4, 2020.[129] Further, Doe #1 did not have any knowledge about other assaults or complaints reported to and handled by LSU's Title IX office pertaining to d'Espalungue, so it would be appropriate to apply equitable tolling principles such that the

---

[123] Plaintiffs filed suit on October 4, 2021 and agree that the one year statute of limitations is appropriate.
[124] Rec. Doc. 1, ¶ 88.
[125] *Id.* at p. 86.
[126] *Id.* at ¶ 183.
[127] *Id.* at ¶ 172.
[128] *Id.* at ¶ 173.
[129] *Id.* at ¶ 174.

September 8, 2020 report would be considered timely.[130] Therefore, Doe #1's claim for post-assault deliberate indifference is also timely,[131] and from the allegations in the Complaint, the Court finds that Doe #1 has stated a claim.

### D. Legal Error

#### 1. Counts I & IV Heightened Risk

The Court dismissed the Count I pre-assault claim and Count IV with prejudice based on its finding that the Fifth Circuit did not recognize a heightened risk claim under Title IX.[132] The Court cited *Poloceno v. Dallas Independent School District* when declining to recognize heightened risk claims under Title IX because the Fifth Circuit stated it had "never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination and it decline[d] to do so" now.[133]

Plaintiffs maintain the Fifth Circuit did not completely foreclose heightened risk claims in sexual assault or harassment cases because *Poloceno* did not involve sexual assault or harassment.[134] Plaintiffs also cite non-binding cases in other district courts that have recognized heightened risk claims in sexual assault and harassment cases.[135] However, in their Reply brief, Plaintiffs cite a new ruling – the *Doe* case discussed above – from this Court wherein Judge Jackson recognized heightened risk claims under Title

---

[130] *Id.* at ¶¶ 121-130; *See Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 475 (M.D. La. 2023).

[131] Plaintiffs also allege that Doe #1's deliberate indifference claims were timely as tolling was suspended from August 26 to September 24, 2021, by Executive Order/Emergency Proclamation Number 170 JBE 2021 in response to Hurricane Ida, such that her post-reporting claim would be timely. *See* Rec. Doc. 1, at ¶ 283.

[132] Rec. Doc. 57, pp. 26-31, 34.

[133] *Id.* at p. 34; *Poloceno v. Dall. Indep. Sch. Dist.*, 826 Fed. App'x 359, 363 (5th Cir. 2020).

[134] Rec. Doc. 62-1, p. 26; Rec. Doc. 37, p. 21.

[135] Rec. Doc. 62-1, p. 26; Rec. Doc. 37, p. 21.

IX.[136] Additionally, since the Court's ruling, the Fifth Circuit has provided more guidance on heightened risk claims under Title IX.[137] Given the intervening case law on heightened risk, there is a legitimate reason to reconsider the Court's decision to dismiss Counts I and IV.

Historically, the Fifth Circuit has declined to acknowledge a heightened risk claim, but recent cases indicate that this circuit is departing from this precedent and joining sister circuits that do recognize such claims.[138] Although the Fifth Circuit in *Poloceno* stated that it has "never recognized or adopted a Title IX theory of liability based on general 'heightened risk' of sex discrimination" and has "declined[d] to do so,"[139] this characterization of the Fifth Circuit's stance of heightened risk claims—as indicated by cases in the Middle District as well as subsequent Fifth Circuit cases recognizing Title IX heightened risk claims within the context of allegations of student-on-student sexual harassment—is limited to the factual instances of *Poloceno*.[140] The Fifth Circuit in *Roe v. Cypress-Fairbanks Independent School District*,[141] and this Court in *Doe v. Board of Supervisors of University of Louisiana Systems*,[142] recognized Title IX heightened risk claims in the context of student-on-student sexual harassment. In *Roe*, the Fifth Circuit dismissed a heightened risk claim because elements of plaintiff's claim were not met; the court did not dismiss on the grounds that it did not acknowledge a heightened risk claim nor was there reference to *Poloceno*.[143] In *Doe*, this court recognized a plaintiff's

---

[136] Rec. Doc.  85, p. 10 (citing *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 468 (M.D. La. 2023)).
[137] *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334 (5th Cir. 2022).
[138] *See, e.g., id.; Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452 (M.D. La. 2023).
[139] *Poloceno v. Dall. Indep. Sch. Dist.*, 826 Fed. App'x 359, 363 (5th Cir. 2020).
[140] *Id.*
[141] 53 F.4th 334 (5th Cir. 2022).
[142] 650 F. Supp. 3d 452 (M.D. La. 2023).
[143] *Roe*, 53 F.4th at 341.

heightened risk claim based on *Roe*.[144] Thus, the Fifth Circuit has not foreclosed these types of claims and there is a legitimate reason for the Court to reconsider its decision to dismiss Plaintiff's heightened risk claims.

To establish a heightened risk claim under Title IX, five elements must be met: "(1) the defendant had actual knowledge of the harassment; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;' and (5) the defendant was deliberately indifferent to the harassment."[145]  The Court finds from the allegations detailed at great length in the Court's previous Ruling, Plaintiffs have stated a plausible heightened risk claim.

2.  <u>Count II Retaliatory Hostile Environment</u>

Does #1-6 allege they were subject a hostile environment due to gender discrimination through a continuous pattern of harassment that did not end until approximately March 2021.[146] In Plaintiff's opposition to LSU's motion to dismiss, they clarified that Does #1-5's hostile environment claims were based on LSU's deliberate indifference to gender discrimination.[147] Plaintiffs also clarified that Doe #6, an employee of LSU, alleges a retaliatory hostile environment claim under Title IX, not an employment discrimination claim under Title VII.[148] Plaintiffs admit that the Fifth Circuit does not

---

[144] *Doe*, 650 F. Supp. 3d at 468.
[145] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).
[146] Rec. Doc. 1, ¶¶ 290, 292.
[147] Rec. Doc.  37, p. 15.
[148] *Id.* at p. 16.

recognize retaliatory hostile environment but urged the Court to recognize the claim because all other circuits have and other district courts within the Fifth Circuit have.[149]

The Court declined to recognize a retaliatory hostile environment claim and dismissed Doe #6's Count II claim with prejudice.[150] The Court dismissed Does #1-5's Count II claims without prejudice so they could file an amended complaint to address the other issues raised.[151] Does #1-5 failed to plausibly plead that LSU had substantial control over d'Espalangue after he absconded to France, which is required to support a finding of deliberate indifference to student-on-student harassment.[152] Does #4 and #5's allegations were not clear as to what conduct created a hostile environment versus what conduct supports their retaliation claim in Count V.[153] Because retaliatory hostile environment is not explicitly recognized in the Fifth Circuit, Does #4 and #5 must amend their complaint to clarify what conduct created a hostile environment.[154] Plaintiffs never filed an amended complaint.

Plaintiffs argue the Court erred in failing to recognize a retaliatory hostile environment claim under Title IX.[155] Plaintiffs cite Title VII and ADA cases to argue the Fifth Circuit has recognized retaliatory hostile environment claims.[156] These cases are not applicable to Plaintiff's Title IX claims and these arguments could have been raised before the Court ruled on Defendants' motions to dismiss. Further, the Fifth Circuit has not explicitly recognized a retaliatory hostile environment claim since the Ruling was issued.

---

[149] *Id.* at p. 17.
[150] Rec. Doc. 57, pp. 44-46.
[151] *Id.* at p. 46.
[152] *Id.* at p. 43.
[153] *Id.*
[154] *Id.*
[155] Rec. Doc. 62-1, pp. 28-29.
[156] *Id.*

Therefore, the Court did not err in dismissing Count II, and there is no legitimate basis for reconsideration. The motion to reconsider Count II is denied. Does #1-5 are still granted leave to amend their complaint to cure the deficiencies identified in the Court's Ruling.

Plaintiff's argument as to why Count V should be reconsidered is based entirely on their argument for why Count II should be reconsidered.[157] Because the argument for Count II does not provide a legitimate reason for the Court to revisit the Ruling, the Court will also not reconsider its Ruling on Count V. Count V is dismissed with prejudice. Plaintiffs shall be given leave to amend to plead, if they can, timely discrete acts of retaliation.

### E.  Discovery

Plaintiffs believe new relevant evidence exists and therefore request an order allowing them access to documents and testimony in two other similar cases against LSU, both of which are now closed.[158]  Given the delay in the Court's assignment of written reasons for its Ruling, the fact that Plaintiffs will be allowed to amend their Complaint, and the fact that a new Scheduling Order is sure to follow, the Court will deny this request without prejudice to Plaintiffs' refiling future discovery motions.

---

[157] *Id.* at pp. 27-28; Rec. Doc.  85, p. 15.
[158] Rec. Doc. 62-1, p. 4 (requesting access to discovery materials for *Lewis v. Louisiana State Univ., et al.*, CV 21-00198-SM-RLB and *Owens v. Louisiana State Univ., et al.*,  CV 21-00242-WBV-SDJ).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Reconsider[159] is GRANTED in part and DENIED in part.  Plaintiffs shall have leave to file a superseding, comprehensive Amended Complaint, within 45 days from the date of this Ruling, to cure deficiencies previously identified by the Court and consistent with this Ruling on reconsideration.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  8th  day of July, 2025.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[159] Rec. Doc.  62.